SCOTT+SCOTT LLP
MARY K. BLASY (211262)
HAL D. CUNNINGHAM (243048)
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565
Fax: (213) 985-1278
mblasy@scott-scott.com
hcunningham@scott-scott.com

*Counsel for Proposed Lead Plaintiff*
*Public Retirement Systems*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| CITY OF ROYAL OAK RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>JUNIPER NETWORKS, INC., KEVIN R. JOHNSON, ROBYN M. DENHOLM and SCOTT G. KRIENS,<br><br>Defendants. | No. 5:11-cv-04003-LHK<br><br>Hon. Lucy H. Koh<br><br>NOTICE OF MOTION AND MOTION OF THE PUBLIC RETIREMENT SYSTEMS FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL<br><br>Date:    January 12, 2012<br>Time:   1:30 p.m.<br>Courtroom: 8, 4th Floor<br><br>ORAL ARGUMENT REQUESTED |

NTC OF MTN AND MTN OF THE PUB RET SYS FOR APPT AS LEAD PLAINTIFF AND FOR
APPROVAL OF ITS SELECTION OF LEAD COUNSEL
5:11-cv-04003-LHK

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. FACTUAL BACKGROUND ...............................................................................................3

III. ARGUMENT .........................................................................................................................4

    A. The Public Retirement Systems Should Be Appointed as Lead Plaintiff ................4

        1. The Public Retirement Systems' Motion Is Timely ....................................4

        2. The Public Retirement Systems Believes that It Possesses the Largest Financial Stake in the Relief Sought by the Class .........................5

        3. Congress Expressly Envisioned that Institutional Investors Like the Public Retirement Systems Would Be Appointed as Lead Plaintiffs in Securities Fraud Class Actions ................................................6

        4. The Public Retirement Systems Is Otherwise Qualified Under Rule 23 ................................................................................................................7

    B. The Court Should Approve the Public Retirement Systems' Choice of Counsel ......................................................................................................................9

IV. CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Armour v. Network Associates, Inc.*,
    171 F. Supp. 2d 1044 (N.D. Cal. 2001) ................................................................................7

*Dukes v. Wal-Mart, Inc.*,
    509 F.3d 1168 (9th Cir. 2007) ..............................................................................................7

*Ferrari v. Gisch*,
    225 F.R.D. 599 (C.D. Cal. 2004) ..........................................................................................5

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1997) ..........................................................................................7, 8

*Hanon v. Dataproducts Corp.*,
    976 F. 2d 497 (9th Cir. 1992) ...............................................................................................7

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ............................................................................................2, 9

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ......................................................................................5

*Lax v. First Merchants Acceptance Corp.*,
    No. 97 Civ. 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ............................................5

*New York University v. Ariel Fund Limited*,
    No. 603803/08, Opinion (New York State Supreme Court, New York County, Feb. 22, 2010) ...............................................................................................................................10

*Perlmutter v. Intuitive Surgical, Inc.*,
    No. 10 Civ. 3451, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ........................................6, 8

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    § 78u-4 .................................................................................................................................10
    § 78u-4(a)(3)(A)(i) .............................................................................................................2, 4
    § 78u-4(a)(3)(A)(i)(II) ...........................................................................................................4
    § 78u-4(a)(3)(B) .......................................................................................................1, 2, 6, 9
    § 78u-4(a)(3)(B)(i) ...........................................................................................................2, 4, 5
    § 78u-4(a)(3)(B)(iii)(I)(bb) ................................................................................................2, 5
    § 78u-4(a)(3)(B)(iii)(II)(aa) ..................................................................................................9
    § 78u-4(a)(3)(B)(v) ...........................................................................................................9, 10

Federal Rules of Civil Procedure
  Rule 23 ................................................................................................................. *passim*
  Rule 23(a) ......................................................................................................................7
  Rule 23(a)(3)..................................................................................................................7
  Rule 23(a)(4)..................................................................................................................8

**OTHER AUTHORITIES**

5 James Wm. Moore, *Moore's Federal Practice,*
  § 23.191[2] (3rd ed. 1999) ............................................................................................4

Conference Report on the Private Securities Litigation Reform Act of 1995, H.R. Rep.
  No. 104-369 (1995) *reprinted in* 1995 U.S.C.C.A.N. 697 ......................................5, 6

Newberg, *et al.*, *Newberg on Class Actions*,
  § 3:13 (4th ed. 2002).....................................................................................................8

TO: ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

PLEASE TAKE NOTICE that putative class members City of Omaha Police and Fire Retirement System (the "Police and Fire Fund") and City of Bristol Pension Fund (the "Bristol Pension Fund") (collectively, the "Public Retirement Systems"), will and hereby do move this Court in Courtroom 8 of the Honorable Lucy H. Koh at the United States District Courthouse, Northern District of California, 280 South 1st Street, San Jose, CA 95113, on January 12, 2012 at 1:30 p.m., or as soon thereafter as the matter may be heard, for an order appointing the Public Retirement Systems lead plaintiff in the above-captioned action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, *et seq.,* and approving its selection of Scott+Scott LLP ("Scott+Scott") as lead counsel for the putative class.

This motion is made on the grounds that the Public Retirement Systems timely filed this motion and is the most adequate lead plaintiff.  The Public Retirement Systems has the most substantial financial interest in the relief sought by the class, and meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, because its claims are typical of the claims of the class and it will fairly and adequately represent the interests of the class.  In addition, the Public Retirement Systems has selected and retained Scott+Scott, a law firm with substantial experience in prosecuting securities fraud class actions, to serve as lead counsel.

This motion is based on this notice of motion and memorandum of law, the Declaration of Mary K. Blasy ("Blasy Decl.") in support thereof, the pleadings and other files and records in this action and such other written or oral argument as may be presented to the Court.

## I.  INTRODUCTION

The Public Retirement Systems respectfully submits this memorandum in support of its motion to be appointed lead plaintiff pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by the PSLRA and for approval of its selection of the law firm of Scott+Scott as lead counsel for the class.

Pursuant to the PSLRA, the Court is to appoint as lead plaintiff, from among those seeking such appointment and who otherwise satisfy the requirements of Rule 23 of the Federal Rules of

1 Civil Procedure, the movant or group of movants with the largest financial interest in the litigation.
2 *See* 15 U.S.C. §78u-4(a)(3)(B).

3   The present matter is a class action that alleges violations of the federal securities laws. The PSLRA establishes a three-step procedure for the selection of lead plaintiffs to oversee class actions brought under the federal securities laws. *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002). First, §27(a)(3)(A)(i) provides that within 20 days after the date on which a securities fraud class action is filed, the initial plaintiff is required to publish a notice advising potential plaintiff class members of the pendency of the action, the claims, the purported class period, and that any member of the class may file a motion with the Court to serve as lead plaintiff no later than 60 days from the publication of that original notice. 15 U.S.C. §78u-4(a)(3)(A)(i). Early notice was first published on August 16, 2011.

  Second, §21D(a)(3)(B)(i) directs this Court to consider any motions brought by class members seeking to be appointed as lead plaintiffs no later than 90 days after publication of the notice. Under this provision of the Exchange Act, the Court shall appoint the "most adequate plaintiff" to serve as lead plaintiff for the class. The Exchange Act provides that the Court shall presume the lead plaintiff to be the person (or group of persons) who:  (1) has either filed a complaint or moved for lead plaintiff in response to a notice; (2) "has the largest financial interest in the relief sought;" and (3) satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

  Finally, after the presumptive lead plaintiff has been identified, other class members have "an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F. 3d at 730.

  For the reasons set forth below, the Public Retirement Systems is "the most adequate plaintiff" under the PSLRA to serve as lead plaintiff. The Public Retirement Systems believes that it has the largest financial interest in the relief sought by this action by way of its losses flowing from its purchases of Juniper Networks, Inc. ("Juniper" or the "Company") securities during the time period between July 20, 2010 and July 26, 2011, inclusive (the "Class Period"). The Public

Retirement Systems suffered market losses of well over $2 million on its Class Period purchases of Juniper securities as a result of defendants' false and misleading statements. The Public Retirement Systems further satisfies the relevant requirements of Rule 23 because it is an adequate class representative with claims typical of the other purchasers of Juniper securities. Moreover, the Public Retirement Systems is comprised of institutional investors, consistent with the legislative intent of the PSLRA.

The Public Retirement Systems' selection of Scott+Scott as lead counsel should be approved because, as the presumptive lead plaintiff, it selects lead counsel. Scott+Scott has extensive experience in the prosecution of securities class actions and will adequately represent the interests of all class members as lead counsel.

## II. FACTUAL BACKGROUND

Presently pending before this Court is the above-captioned action (the "Action") brought on behalf of a class of purchasers of Juniper securities. The Action alleges violations of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 by Juniper and certain of the Company's officers and/or directors. ¶¶1, 11.[1]

According to the Complaint, in contrast to the Company's public disclosures during the Class Period, Juniper and certain of its executive officers were aware or should have been aware that: (1) due to technical issues with certain of its products and turnover in its sales force, Juniper was losing market share in its security business to its competitors; (2) in order to maintain market share and meet its previously announced growth rate targets in the face of the intense pricing pressure in both the switching and routing markets, Juniper was forced to significantly cut pricing, which was having a material negative effect on the Company's margins; (c) Juniper's new product launches would not meaningfully contribute to the Company's operations in 2011; and (d) based on the foregoing, Juniper executives lacked a reasonable basis for their positive statements about Juniper's market

---

[1] All ¶ and ¶¶ are to the Complaint, ECF No. 1.

NTC OF MTN AND MTN OF THE PUB RET SYS FOR APPT AS LEAD PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL

3

5:11-cv-04003-LHK

share, orders, new product introductions, gross and operating margins and the Company's ability to deliver upon its long-term growth model. ¶¶9, 43.

The Complaint alleges that on July 26, 2011, after the close of trading, Juniper issued a release reporting the Company's actual second quarter 2011 financial and operational results and forward guidance, both of which came in well below what defendants had led stock analysts and the investment community to expect, which began revealing the truth and removed inflation from Juniper's stock price. ¶41. The Company significantly lowered its revenue guidance for 2011 to a year-over-year increase of only 12% to 14%, well below the 20% or higher revenue growth model touted by Juniper's executives during the Class Period. *Id.* Juniper's stock fell sharply over 21%, or $6.51 per share, to close at $24.66 on volume of 61.6 million shares the following trading day. ¶42.

### III.    ARGUMENT

#### A.    The Public Retirement Systems Should Be Appointed as Lead Plaintiff

##### 1.    The Public Retirement Systems' Motion Is Timely

The plaintiff who files an action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). On August 16, 2011, a notice of pendency of the action was published via *Business Wire*. Blasy Decl., Ex. A. Because notice was published on *Business Wire* one day after the Action was filed, notice was timely. *See* 5 James Wm. Moore, *Moore's Federal Practice,* §23.191[2] at 23-613 (3rd ed. 1999) ("a press release on *Business Wire*, which disseminates the information electronically to the news media, on-line services, and computer databases available to the investment community, satisfies the early notice requirement"). Class members who file a complaint or move pursuant to §21D(a)(3)(B) of the Exchange Act are eligible to be appointed as lead plaintiffs, so long as their motion is timely. 15 U.S.C. §78u-4(a)(3)(B)(i). Here, the Public Retirement Systems' motion is filed within 60 days from the publication of notice and, as such, is timely. 15 U.S.C. §78u-4(a)(3)(A)(i)(II).

### 2. The Public Retirement Systems Believes that It Possesses the Largest Financial Stake in the Relief Sought by the Class

The PSLRA provides that courts:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

15 U.S.C. §78u-4(a)(3)(B)(i). The Exchange Act requires that courts adopt a rebuttable presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that "has the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb). Congress also expressly emphasized that increasing the role of larger investors, such as the Public Retirement Systems, which typically have a larger financial stake in the outcome of the litigation and are governed by experienced fiduciaries, would be beneficial because such investors with larger financial stakes are more apt to effectively manage complex securities litigation. *See* Conference Report on the Private Securities Litigation Reform Act of 1995, H.R. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 697, 733. ("[C]lass members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.").

While the PSLRA does not provide a method for determining the relative financial interests of lead plaintiff movants, Courts of the Ninth Circuit and others have adopted the four-factor *Lax* inquiry to determine "largest financial interest" under the PSLRA: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *See Ferrari v. Gisch*, 225 F.R.D. 599, 602 (C.D. Cal. 2004); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (citing *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)). The Public Retirement Systems collectively purchased 125,008 shares of Juniper common stock during the Class Period, expending over $4.8 million to purchase those shares, and retained all of those shares through the end of the Class Period and the disclosure of the relevant truth. *See* Blasy Decl., Ex. B. As a result, the Public Retirement Systems

incurred losses of well more than $2 million on its transactions in Juniper stock acquired during the Class Period.[2]

### 3. Congress Expressly Intended that Institutional Investors Like the Public Retirement Systems Would Be Appointed as Lead Plaintiffs in Enacting the PSLRA

When enacting the PSLRA in 1995, Congress reasoned that increasing the role of larger investors, like the Public Retirement Systems' members, which typically have a larger financial stake in the outcome of the litigation and are governed by experienced fiduciaries, would be beneficial because investors with large financial stakes are more apt to effectively manage complex securities class action litigation. *See* Conference Report on the Private Securities Litigation Reform Act of 1995, H.R. Rep. No. 104-369, at 34 ("[C]lass members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."); *Perlmutter v. Intuitive Surgical, Inc.*, No. 10 Civ. 3451, 2011 WL 566814, at *13 (N.D. Cal. Feb. 15, 2011) ("appoint[ing] an institutional investor, … comports with the PSLRA's goal to increase the likelihood that institutional investors would serve as lead plaintiffs").

Here, the Public Retirement Systems, comprised of two institutional investors possessing significant financial stakes in this litigation, is precisely the type of lead plaintiff envisioned by Congress and, therefore, should be appointed. As experienced and sophisticated institutional investors charged with managing tens of millions of dollars of retirement savings for current and retired public service employees and their families, they both share a mutual interest in both deterring fraud in the capital markets in which they invest, and in directing the vigorous prosecution of this particular class action to obtain the largest recovery possible for Juniper's defrauded investors.

---

[2] *See* Blasy Decl., Ex. B. The total potential recoverable losses suffered by lead plaintiff movants are not the same as their legally compensable damages, measurement of which is often a complex legal question that cannot be determined at this stage of the litigation. The approximate losses, however, can be determined from the Certification requirement under Section 21D of the Exchange Act, 15 U.S.C. §78u-4(a)(2)(A) and are based upon reference to information concerning the current market for the Company's shares.

### 4. The Public Retirement Systems Is Otherwise Qualified Under Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the Exchange Act provides that, at the outset of the litigation, lead plaintiffs must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id*. With respect to the qualifications of the class representative, Rule 23(a) requires generally that the plaintiff's claims be typical of the claims of the class and that the representative fairly and adequately protect the interests of the class. As detailed below, the Public Retirement Systems satisfies the typicality and adequacy requirements of Rule 23(a) and is qualified to be appointed as lead plaintiff here.

The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff has (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct by defendants, and (3) their claims are based on the same legal issues. *Hanon v. Dataproducts Corp.*, 976 F. 2d 497, 508 (9th Cir. 1992); *Armour v. Network Associates, Inc.*, 171 F. Supp. 2d 1044, 1052 (N.D. Cal. 2001). The Ninth Circuit has held that Rule 23(a)(3) should be interpreted somewhat permissively and that "'representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical.'" *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1184 (9th Cir. 2007) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1997)).

Here, the questions of law and fact common to the members of the class that predominate over questions that may affect individual class members include the following:

(i) whether the Exchange Act was violated by defendants; and

(ii) whether the members of the class have sustained damages and, if so, what is the proper measure of damages.

As a result, there is a well-defined community of interest in the questions of law and fact involved in this case. The claims asserted by the Public Retirement Systems, which acquired Juniper securities during the Class Period, are typical of the claims of the members of the proposed class. Because the claims asserted by the Public Retirement Systems are based on the same legal theories and arise "'from the same event or practice or course of conduct that gives rise to the claims of other

class members,'" typicality is satisfied. *See* Newberg, *et al.*, *Newberg on Class Actions*, §3:13 (4th ed. 2002). The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party, "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Hanlon*, 150 F.3d at 1020. In order to satisfy this requirement, a prospective lead plaintiff must show that he, she, or it does not have any conflicts of interest with other class members and that the plaintiff and counsel will vigorously prosecute the case. *Perlmutter*, 2011 WL 566814, at *13.

The Public Retirement Systems will more than adequately represent and protect the interests of the class. First, its interests are clearly aligned with the members of the proposed class and there is no evidence of any antagonism between its interests and the interests of the proposed class members. Second, as detailed above, the Public Retirement Systems shares substantially similar questions of law and fact with the members of the proposed class and its claims are typical of the members of the class. Third, its members have amply demonstrated that they will adequately serve as class representatives by signing sworn Certifications affirming their willingness to serve as, and assume the responsibilities of, class representatives. *See* Blasy Decl., Ex. C. The Public Retirement Systems is a small, cohesive group of two public pension funds. The members of the Public Retirement Systems have both worked with Scott+Scott since long before this action was commenced and will continue consulting with Scott+Scott and each other on a regular basis to direct the course of this litigation with the advice of counsel. They have agreed upon a decision-making structure. They are both sophisticated investors who understand their obligations as lead plaintiff and are experienced at overseeing counsel in the course of managing their respective funds' assets. Finally, the Public Retirement Systems has taken significant steps that will promote the protection of interests of the class: specifically, it carefully evaluated the litigation and is selecting proposed lead counsel who are qualified, experienced and able to conduct this complex litigation in a professional manner. *See* Blasy Decl., Ex. D. Clearly, the Public Retirement Systems satisfies the requirements of Rule 23 and all of the PSLRA's prerequisites for appointment as lead plaintiff in this action.

In sum, the Public Retirement Systems, having the largest financial interest and satisfying the requirements of Rule 23 and all of the PSLRA's prerequisites for appointment as lead plaintiff, should be appointed Lead Plaintiff in the Action pursuant to 15 U.S.C. §78u-4(a)(3)(B).

**B.     The Court Should Approve the Public Retirement Systems' Choice of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 734-35. As such, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). Here, the Public Retirement Systems has selected the law firm of Scott+Scott to represent the class. Scott+Scott is a firm with substantial experience in the prosecution of shareholder and securities class actions and possesses the resources necessary to efficiently conduct this litigation. *See* Blasy Decl., Ex. D. Specifically, Scott+Scott has served as lead or co-lead counsel in many high-profile class actions, recovering hundreds millions of dollars for class members and others harmed by corporate fraud and mismanagement.[3]

For instance, commenting on the speed, legal acumen and tenacity Scott+Scott partners employed in obtaining a temporary restraining order enjoining the "off shore transfer of . . . approximate[ly] $1 billion in assets" held by Madoff "feeder funds," one court recently found that:

> It is this Court's position that Scott+Scott did a superlative job in its representation … . For the record, it should be noted that Scott+Scott has

---

[3] Some recent recoveries of note for Scott+Scott include: a settlement of $70 million for a class of purchasers of Credit Suisse stock in *Cornwell v. Credit Suisse Group, et al.* No. 08-cv-03758 (S.D.N.Y.); settlement of $80 million for a class of purchasers of Priceline stock in *In re Priceline.com Sec. Litig.*, No. 00-01844 (D. Conn.); and a $122 million settlement for purchasers of Mattel stock in *Thurber v. Mattel, Inc.*, No. 99-10368 (C.D. Cal.). Additional recent securities settlements obtained by Scott+Scott, acting as lead or co-lead counsel, include: *In re Emulex Corp. Sec. Litig.*, No. 01-00219 (C.D. Cal.) (settlement of $39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Cir. Ct. Jackson County, Mo.) (settlement of $50 million); *In re Northwestern Corp. Sec. Litig.*, No. 03-04049 (D.S.D.) (settlement of $61 million); *Irvine v. Imclone Systems, Inc.*, No. 02-00109 (S.D.N.Y.) (settlement of $75 million); *Schnall v. Annuity and Life Re (Holdings) Ltd.*, No. 02-02133 (D. Conn.) (settlement of $27 million); *In re Qwest Communications International, Inc.*, No. 02-08188 (Colorado District Court, City and County of Denver) (shareholder derivative settlement including significant corporate governance reforms and $25 million for the company); and *In re Lattice Semiconductor Corp. Deriv. Litig.*, No. 043327 (Cir. Ct. Oregon) (significant monetary recovery and business reforms, including termination of the then-CEO, termination and adoption of significant changes to the company's auditing, insider trading, executive compensation and other internal practices).

demonstrated a remarkable grasp and handling of the extraordinarily complex matters in this case. The extremely professional and thorough means by which [Scott+Scott] has litigated this matter has not been overlooked by this Court. They have possessed a knowledge of the issues presented and this knowledge has always been used to the benefit of all investors.

*New York University v. Ariel Fund Limited*, No. 603803/08, Opinion at 9-10 (New York State Supreme Court, New York County, Feb. 22, 2010), Blasy Decl., Ex. E.

Accordingly, the Court should approve the Public Retirement Systems' selection of Scott+Scott as Lead Counsel.

## IV.     CONCLUSION

For all the foregoing reasons, the Public Retirement Systems respectfully requests that the Court appoint it Lead Plaintiff in the Action pursuant to §27D(a)(3)(B) of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4, and approve the Public Retirement Systems' selection of the law firm of Scott+Scott LLP to serve as lead counsel pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v).

DATED: October 17, 2011

Respectfully submitted,
SCOTT+SCOTT LLP

/s/ Mary K. Blasy
MARY K. BLASY (211262)
HAL D. CUNNINGHAM (243048)
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565
Fax: (213) 985-1278
mblasy@scott-scott.com
hcunningham@scott-scott.com

– and –

DAVID R. SCOTT
P.O. Box 192
156 South Main Street
Colchester, CT 06415
Telephone: 860-537-3818
Facsimile: 860-537-4432
drscott@scott-scott.com

*Counsel for Proposed Lead Plaintiff the Public Retirement Systems*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2011, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

    /s/ Mary K. Blasy
MARY K. BLASY
SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-233-4565
mblasy@scott-scott.com