1  NINA F. LOCKER, State Bar No. 123838
   nlocker@wsgr.com
2  STEVEN GUGGENHEIM, State Bar No. 201386
   sguggenheim@wsgr.com
3  JONI OSTLER, State Bar No. 230009
   jostler@wsgr.com
4  JESSICA L. SNORGRASS, State Bar No. 259962
   jsnorgrass@wsgr.com
5  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
6  650 Page Mill Road
   Palo Alto, CA 94304-1050
7  Telephone:  (650) 493-9300
   Facsimile:   (650) 565-5100
8

9  Attorneys for Defendants
   Juniper Networks, Inc., Kevin R. Johnson,
10 Robyn M. Denholm, and Scott G. Kriens

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13 CITY OF OMAHA POLICE AND FIRE              )  CASE NO.:  11-cv-4003 LHK
   RETIREMENT SYSTEM and CITY OF              )  CLASS ACTION
14 BRISTOL PENSION FUND, Individually and on  )
   Behalf of All Others Similarly Situated,   )
15                                            )  **DEFENDANTS' REPLY IN**
                Plaintiffs,                   )  **SUPPORT OF MOTION TO**
16                                            )  **DISMISS SECOND AMENDED**
           v.                                 )  **COMPLAINT FOR VIOLATION OF**
17                                            )  **THE FEDERAL SECURITIES**
   JUNIPER NETWORKS, INC., SCOTT G.           )  **LAWS**
18 KRIENS, KEVIN R. JOHNSON, and ROBYN        )
   M. DENHOLM,                                )  Date:   January 31, 2013
19                                            )  Time:   1:30 p.m.
                Defendants.                   )  Dept:   8, 4th Floor
20                                            )
                                              )  Before:  Honorable Lucy H. Koh
21                                            )
                                              )
22 _____    )

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

INTRODUCTION ....................................................................................................................1

ARGUMENT .........................................................................................................................2

I.  PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE FALSE OR
    MISLEADING STATEMENT .....................................................................................2

    A.  Juniper's Long Term Projections Are Not Actionable Under the Safe
        Harbor.............................................................................................................2

    B.  Plaintiffs Fail To Allege That Juniper's Long Term Projections Were False
        When Made .....................................................................................................2

    C.  Plaintiffs Fail To Allege Any False Or Misleading Statement Regarding
        Juniper's Growth Or Revenues ........................................................................4

    D.  Plaintiffs Fail To Allege That Juniper's Disclosures Regarding The New
        Accounting Rules Violated GAAP ...................................................................5

        1.  Mr. Harden's Declaration Should Not Be Considered ..............................5

        2.  Plaintiffs And Mr. Harden Fail To Show That FASB Guidelines
            Required Juniper To Make Any Further Disclosures.................................6

II. PLAINTIFFS FAIL TO ALLEGE FACTS CREATING A "STRONG
    INFERENCE" OF SCIENTER .....................................................................................9

CONCLUSION ....................................................................................................................10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

<u>Page(s)</u>

**CASES**

*Bolt v. Merrimack Pharms., Inc.*,
    503 F.3d 913 (9th Cir. 2007)..........................................................................................10

*Curry v. Hansen Medical, Inc.*,
    No. 09-5094, 2012 WL 3242447 (N.D. Cal. Aug. 10, 2012)............................................4

*DeMarco v. DepoTech Corp.*,
    149 F. Supp. 2d 1212 (S.D. Cal. 2001) ...........................................................................6

*Fin. Acquisition Partners LP v. Blackwell*,
    440 F.3d 278 (5th Cir. 2006) ..........................................................................................6

*In re Ebix, Inc. Sec. Litig.*,
    No. 11-cv-2400, 2012 WL 4482798 (N.D. Ga. Sept. 28, 2012) .......................................4

*In re MannKind Sec. Actions*,
    835 F. Supp. 2d 797 (C.D. Cal. 2011).............................................................................6

*In re Medicis Pharm. Corp. Sec. Litig.*,
    689 F. Supp. 2d 1192 (D. Ariz. 2009) ............................................................................10

*In re Mikohn Gaming Corp. Sec. Litig.*,
    No. 1410, 2006 WL 2547095 (D. Nev. Sept. 1, 2006) .....................................................9

*In re St. Jude Medical, Inc. Sec. Litig.*,
    836 F. Supp. 2d 878 (D. Minn. 2011) ..............................................................................4

*In re Taleo Corp. Sec. Litig.*,
    No. 09-00151, 2010 WL 597987 (N.D. Cal. Feb. 17, 2010) ...........................................10

*Werner v. Werner*,
    267 F.3d 288 (3d Cir. 2001)............................................................................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

When the Court dismissed Plaintiffs' prior complaint it identified numerous defects in their claims. Despite this, Plaintiffs' Second Amended Complaint ("SAC") adds virtually nothing new: three paragraphs attributed to a new confidential witness in support of Plaintiffs' claim that Juniper made a false forecast, and the opinions of a purported accounting expert as to why Juniper should have disclosed additional information regarding its adoption of the new accounting rules. Apart from the fact that the SAC fails to remedy any of the deficiencies the Court identified, Plaintiffs' Opposition brief reads almost as though the Court's earlier decision never happened. Plaintiffs repeat, sometimes verbatim, the same arguments the Court previously rejected, and make little or no effort to respond to the arguments in Defendants' present motion to dismiss.

Defendants' opening brief showed, for example, that Plaintiffs have alleged no new facts that would prevent their forecasting claim from being barred, as this Court previously held it was, by the Safe Harbor of the Private Securities Litigation Reform Act ("PSLRA"). Plaintiffs' only response is to say they disagree with the Court's prior opinion and are purportedly preserving the argument for appeal. In other words, Plaintiffs acknowledge that the Court's order on the present motion should dismiss their forecasting claim with prejudice.

Of course, even if that claim were not barred by the Safe Harbor, the only allegations in the SAC that differ from those alleged in Plaintiffs' prior complaint are, as noted, three paragraphs attributed to a new confidential witness, CW6. Plaintiffs do not address Defendants' arguments that the allegations attributed to CW6 show neither falsity nor scienter. Indeed, their only response is to claim that CW6 said something that is *not* alleged in the SAC. Thus, as before, Plaintiffs have failed to allege facts showing Juniper made a false forecast.

With respect to Plaintiffs' accounting disclosure claim, as Defendants showed, and as Plaintiffs do not dispute, the SAC alleges no new facts. Instead, the SAC differs from Plaintiffs' first complaint only in that it now alleges the *opinions* of Plaintiffs' purported expert Mr. Harden about what should have been disclosed. Inasmuch as Plaintiffs do not and cannot show that the

additional information they say should have been disclosed (1) was required by FASB; (2) was required to prevent any affirmative statement by Juniper from being misleading; or (3) would have significantly altered the total mix of information available to the market, Plaintiffs' argument continues to be that Juniper's disclosures should have been more complete.  As this Court previously held, even if true, such a claim is simply not actionable under the federal securities laws.  Plaintiffs' accounting disclosure claim should again be dismissed.

Finally, Plaintiffs do not dispute that they have alleged no new facts bearing upon any individual defendant's state of mind.  Instead, they simply rehash arguments that this Court previously found insufficient – that scienter can be inferred here based on allegations regarding "core operations" and stock sales.  Plaintiffs' failure to allege any facts creating a strong inference of scienter is, in itself, a reason to dismiss Plaintiffs' claims.

Defendants respectfully submit that the Court should dismiss the SAC, this time, with prejudice.

## ARGUMENT

### I.    PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE FALSE OR MISLEADING STATEMENT

#### A.    Juniper's Long Term Projections Are Not Actionable Under the Safe Harbor

Plaintiffs concede that they have not alleged facts that would change the Court's prior holding that Juniper's long term projections are protected by the Safe Harbor and therefore not actionable.  Opp. at 18.  Plaintiffs state that they are preserving this argument for appeal, thus inviting the Court to enter an order dismissing this claim with prejudice.  *Id.*  Since the Safe Harbor bars Plaintiffs' forecasting claim, the Court should dismiss that claim.  Order at 17.

#### B.    Plaintiffs Fail To Allege That Juniper's Long Term Projections Were False When Made

Plaintiffs fail to allege a false forecast in any event.  As they do not dispute, the *only* new allegations in the SAC that bear upon the forecast are three paragraphs attributed to CW6.  Mot. at 13; ¶¶ 48-50.  As they also do not dispute, the allegations attributed to CW6 do not show how he would have knowledge of the "problems" he purportedly "confirmed" (*e.g.*, "software

1    problems," and "slumping sales"), the allegations give no quantifiable or concrete specifics, and

2    the allegations fail to explain how or if any of the "problems" rendered Juniper's projections

3    unachievable at any point in time. Mot. at 13-14; ¶¶ 48-50.  To the contrary, as Defendants

4    pointed out, although CW6 supposedly had access to Juniper's financial forecasts, he never

5    alleges that those forecasts showed, at any point in time, that Juniper could not achieve its long

6    term projections.  Mot. at 14.

7         Plaintiffs dispute that last point in their brief.  According to them, CW6 "explained [that]

8    by the beginning of 2010, Juniper's internal financial forecasts showed that Juniper could not

9    meet Defendants' lofty profit targets.  ¶ 48."  Opp. at 14.  Wholly apart from the vagueness of

10   the allegation, neither Paragraph 48 of the SAC nor the other two paragraphs attributed to CW6

11   says any such thing.  *See* ¶¶ 48-50.  In other words, Plaintiffs effectively concede that the *actual*

12   allegations related to CW6 in the SAC are insufficient to show Juniper's long term projections

13   were false when made.

14        Plaintiffs' remaining arguments are simply attempted do-overs of arguments they made

15   on the prior motion to dismiss briefing.  Thus, although Plaintiffs' allegations regarding CWs 1-5

16   have not changed (Mot. at 12-13), Plaintiffs repeat whole sections of their prior Opposition

17   discussing confidential witnesses 1 through 5 (including portions Defendants previously

18   identified as misleading).  *Compare* Opp. at 4-9 *with* Original Opp. (Doc. No. 69) at 5-10; *see*

19   Original Reply (Doc. No. 76) at 11-12 & n.8.  The Court rejected those arguments before and

20   should reject them again.  Order at 21-23.

21        The Court also previously considered and rejected Plaintiffs' contention (Opp. at 13-15;

22   Original Opp. at 15-16) that Juniper's long term projections were false because, without the

23   change in accounting rules, Juniper could not have achieved its 20% year over year revenue

24   growth in 2010.  Order at 8, 23.  As before, Plaintiffs do not dispute that the revenue Juniper

25   recognized under the new accounting rules was real revenue, earned from real sales in 2010, and

26   properly recorded.  *See* Order at 23 ("Plaintiffs do not even allege that Defendants violated

27   GAAP standards or that their financial statements were false.").  Further, Plaintiffs themselves

28   show that even without the additional revenues Juniper *properly recognized* under the new

accounting rules, Juniper achieved 16.3% year over year growth from 2009 to 2010 – a mere

3.7% shy of the 20% year over year growth Plaintiffs say was simply unachievable.  Opp. at 9.

Moreover, when comparing periods that were both under the new accounting rules, Q1 2010 to

Q1 2011, Juniper achieved 21% year over year growth, just as it delivered 18% year over year

growth in the first half of 2011 as compared to the first half of 2010.  *See* Original Mot. (Doc.

No. 54) at 4; Mot. at 8; Opp. at 9.  In short, as was true the last time, Plaintiffs have failed to

allege facts showing that Juniper's projections of 20% revenue growth were not achievable when

those projections were made.

  **C.**  **Plaintiffs Fail To Allege Any False Or Misleading Statement Regarding Juniper's Growth Or Revenues**

  Plaintiffs rehash their arguments that Defendants' general statements of optimism about

Juniper's growth were misleading because Juniper did not disclose the various "problems" it was

purportedly suffering, and that Juniper's accurate reports of quarterly results were misleading

because Juniper did not repeat its disclosures about the new accounting rules in every press

release.  Opp. at 14-15; Original Opp. at 15-17.

  As this Court held, Defendants' general statements of optimism (*e.g.*, that Juniper was

"on track" and Defendants were "confident") are not actionable under the federal securities laws.

Order at 20-21.  The new cases Plaintiffs cite in support of this old argument are not apposite.

In *Curry v. Hansen Medical, Inc.*, No. 09-5094, 2012 WL 3242447, at *5-6 (N.D. Cal. Aug. 10,

2012), and *In re St. Jude Medical, Inc. Securities Litigation*, 836 F. Supp. 2d 878, 883-84, 889-

94 (D. Minn. 2011), the plaintiffs adequately alleged that the defendants' statements regarding

revenues and growth were false or misleading because the defendants engaged in accounting

fraud by improperly recognizing revenue.  No accounting fraud is alleged here.  And in *In re*

*Ebix, Inc. Securities Litigation*, No. 11-cv-2400, 2012 WL 4482798 (N.D. Ga. Sept. 28, 2012),

the plaintiffs alleged specific facts showing Ebix had little or no organic growth, while the

defendants continually told investors that organic growth rates ranged from 11% to 27%.  *Id.* at

*16.

1    Plaintiffs' contention that investors did not know that Juniper's *accurately* recorded

2    revenue and growth numbers benefited from the new accounting rules (Opp. at 13-15), is, as it

3    was the last time the Court considered it, an argument that requires the Court to assume the

4    market had amnesia.  Juniper clearly disclosed in its Q1 2010 press release, conference call, and

5    10-Q that it adopted the new accounting rules, and Juniper also explained how the new rules

6    differed from the old rules and how the new rules would impact the Company's reported

7    revenues and deferred revenues in multiple places in each of its quarterly and annual SEC filings

8    for 2010.  *See* Order at 8-9, 24; Mot. at 5-8; ¶¶ 58-59, 64, 80, 84, 91, 105, 109, 115, 130, 135,

9    189-90.  Plaintiffs cannot dispute that, using the information Juniper disclosed, investors could

10   readily calculate – as Plaintiffs did – what Juniper's revenue growth would have been without

11   the additional revenue from the new accounting rules.  Opp. at 9; ¶¶ 55, 112-13.  No case offered

12   by Plaintiffs supports their specious argument that Juniper's *accurate* reports of revenue were

13   rendered misleading because Juniper did not repeat its disclosures about the accounting rules

14   often enough.  Plaintiffs fail to show, as they must, that repeated disclosure of the same

15   information would materially alter the total mix of information available.  *See* Order at 8-9, 23-

16   24.

17   **D.    Plaintiffs Fail To Allege That Juniper's Disclosures Regarding The New Accounting Rules Violated GAAP**

18

19        Plaintiffs' remaining argument that Juniper's disclosures did not satisfy the guidelines in

20   the new accounting rules is, like nearly everything else in the SAC, a repeat of arguments the

21   Court previously rejected.  Plaintiffs have not alleged new facts to support their purported

22   disclosure claim.  Mot. at 2-3, 11, 15.  Instead, they have attached a declaration of their "expert,"

23   Mr. Harden, who offers his opinion that Juniper should have disclosed additional details, and

24   have alleged his opinions in their Complaint.  *Id.* at 10-11, 15.

25        **1.    Mr. Harden's Declaration Should Not Be Considered**

26        At the outset, the Court should decline to consider the Harden Declaration that Plaintiffs

27   have attached to the SAC.  While Plaintiffs say the Court should consider Mr. Harden's opinions

28   in determining whether the SAC adequately alleges falsity (Opp. at 12-13), the question on this

1   motion to dismiss is whether the Plaintiffs have alleged *facts* sufficient to show that Juniper's

2   disclosures regarding the new accounting rules were false when made.  Mot. at 15-16.  Thus,

3   while the Court may consider Plaintiffs' non-conclusory factual allegations, the Court should

4   disregard Mr. Harden's opinions.  *Id.*; *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212,

5   1221-22 (S.D. Cal. 2001) ("[A]verments in an expert affidavit carry no additional probative

6   weight merely because they appear in an affidavit[.]"); *Fin. Acquisition Partners LP v.*

7   *Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) ("PSLRA complaints must allege specific facts . . .

8   opinions cannot substitute for facts under the PSLRA.").

9          The case cited by Plaintiffs, *In re MannKind Securities Actions*, 835 F. Supp. 2d 797

10  (C.D. Cal. 2011), is not to the contrary.  Opp. at 13.  There, the expert supplied *facts* (*e.g.*, that

11  the FDA did not normally make non-binding agreements pre-approving clinical study protocols,

12  and that defendants' bioequivalency study was methodologically flawed) that plaintiffs alleged

13  in their complaint.  835 F. Supp. 2d at 804-05, 821.  In contrast, Mr. Harden offers no *facts*.

14  Rather, he purports to interpret the disclosure guidelines in the new accounting rules for the

15  Court, and effectively purports to tell the Court what Juniper should have disclosed in its federal

16  securities filings.  This is thus nothing like the expert report in *MannKind*.[1]

17          **2.      Plaintiffs And Mr. Harden Fail To Show That FASB Guidelines**
                   **Required Juniper To Make Any Further Disclosures**

18

19          Even if the Court considers Mr. Harden's declaration and the allegations based upon that

20  declaration, it does not save Plaintiffs' claims.  Mot. at 16-21.  Mr. Harden argues that three

21  additional disclosures – which he admits were *not* required by FASB – would have helped

22  investors "understand the effect of the change" in accounting rules.  Harden ¶¶ 4, 14 & n.9, 19.

23  Defendants showed, however, that these arguments cannot withstand scrutiny.  Mot. at 16-21.

24  _____

25      [1] Further, in *MannKind* the expert's report merely "buttressed" the facts plaintiffs alleged and
    was *not* essential to the court's holding that the complaint satisfied the PSLRA.  *Id.* at 811, 821.

26  In contrast, Plaintiffs' claim that Juniper's disclosures were inadequate rests entirely on Mr.
    Harden's opinions.  There are no additional alleged facts for Mr. Harden's opinion to "buttress."

27  *Compare* SAC ¶¶ 14-17, 65-67, 81-83, 92-94, 106-08, 116-18, 132-34, 181-93 *with* Harden ¶¶ 6-
    20.

28

Plaintiffs contend, relying upon Mr. Harden, that Juniper should have disclosed the effect of the rule change on operating margins, net income, and earnings per share.  Opp. at 16; ¶ 191(a); Harden ¶ 18.a.  But, the FASB disclosure guidelines never even mention these metrics, let alone require them.  Mot. at 19.  Regardless, Plaintiffs *concede* they could calculate these metrics using the information Juniper disclosed.  *Id.*  Plaintiffs simply do not respond to these points.

Plaintiffs contend, relying upon Mr. Harden, that Juniper should have broken out the amount of revenue that was deferred under the new accounting rules in 2010 so that investors would understand that "the new accounting rules generally resulted in less deferred revenue" than the previous rules.  ¶ 191(c); Harden ¶ 18.c; Opp. at 10-11, 16.  Juniper, however, specifically told investors that the new accounting rules generally resulted in less deferred revenue than the previous rules, and repeatedly disclosed that it expected deferred revenue balances to decline over time under the new rules as a result.  Mot. at 17-18.  Again Plaintiffs say nothing in response.

Finally, Plaintiffs contend, relying upon Mr. Harden, that Juniper should have disclosed the magnitude of revenue previously deferred under the old rules that would be recognized in 2010.  Opp. at 10, 16; ¶ 191(b); Harden ¶ 18.b.  Defendants showed that Juniper *did* disclose this information in its FY 2009 Form 10-K.  Mot. at 17.  Rather than dispute this, Plaintiffs turn to a familiar refrain:  that the disclosure was "buried" and that "investors are not expected to sleuth through old SEC filings" for information.  Opp. at 17.

 The disclosure was neither old nor buried.  It was contained in Juniper's 2009 Form 10-K filed on February 26, 2010 in the section discussing deferred revenue.  Doc. No. 93-1 at 87; Opp. at 17.  Where else would investors expect to find information about Juniper's deferred revenues that would be recognized in 2010, if not in the deferred revenue discussion of Juniper's periodic SEC filings – and, in particular, the most recent annual 10-K?  *See* Order at 9, 23-24 (rejecting Plaintiffs' argument that Juniper's disclosures were "buried" because they were

1    contained in Juniper's SEC filings); *Werner v. Werner*, 267 F.3d 288, 297 (3d Cir. 2001)

2    (rejecting plaintiffs' argument that information contained in annual report was "buried").[2]

3          Beyond the foregoing, Plaintiffs simply repeat the same argument they made previously:

4    that Juniper's disclosures were insufficient to inform investors that Juniper could recognize more

5    revenue up front under the new rules, while also recognizing previously deferred revenues under

6    the old rules, and that this would purportedly cause a "bump" that would "disappear in four to six

7    quarters" when Juniper depleted its deferred revenue balances.  Opp. at 10-11, 16; Original Opp.

8    at 2-3, 10, 16-17.  But Juniper said just that, albeit without misleading terms such as "bump" and

9    "disappear."  Juniper told investors:  (i) the new rules generally allowed Juniper to recognize

10   more revenue up front and defer less; (ii) Juniper continued to recognize revenue from its

11   deferred revenue balances under the old rules; and (iii) due to the foregoing two facts, Juniper

12   expected its deferred revenue balances to decline over time.  Mot. at 6-7, 17-19; Original Mot. at

13   7-9; Original Reply at 7-8.  Moreover, because Juniper reported its deferred revenues balances,

14   investors could also see for themselves whether they declined – and could see that, although

15   Juniper expected its deferred revenues to decline due to the new accounting rules, deferred

16   revenues actually *increased*.  Mot. at 17-19 & 18 n.7; Original Mot. at 9, 11.  As before,

17   Plaintiffs do not dispute any of these facts.  As before, the Court should reject Plaintiffs'

18   argument.  Order at 23-25.[3]

19         As this Court noted when it dismissed Plaintiffs' disclosure claim the first time, Plaintiffs

20   do not dispute that Juniper's disclosures complied with Example 1 from the FASB disclosure

21   guidelines.  Mot. at 5-8; Order at 24.  While they propose additional information that Juniper

22   

23      [2] Indeed, Plaintiffs themselves seemed to have no difficulty finding this disclosure.  The SAC
     repeatedly refers to Juniper's disclosure, in each periodic SEC filing, of the amount of deferred

24   revenue expected to be recognized in the following twelve months.  Harden ¶ 20; SAC ¶¶ 85,
     110, 136, 193.

25      [3] Because they fail to explain how Juniper's disclosures violated the FASB disclosure

26   guidelines, Plaintiffs revert to their claim that the Court must "take[] as true" Plaintiffs' opinion
     that Defendants "*did not* comply" with FASB.  Opp. at 17 (copied from Original Opp. at 21).

27   This argument was wrong before, and it is wrong now.  Plaintiffs must allege *facts* to show that
     FASB required Juniper to make further disclosures.  Order at 24.

28

1  could have disclosed (much of which actually was disclosed), Plaintiffs fail to show that any of

2  this additional information (1) was required by FASB; (2) was required to prevent any

3  affirmative statement by Juniper from being misleading; or (3) would have significantly altered

4  the total mix of information available to the market.  Order at 23.  Thus, at bottom, the new

5  opinions Plaintiffs allege based upon Mr. Harden's declaration are nothing more than a rehash of

6  the claim Plaintiffs previously made and this Court previously rejected as not actionable under

7  the federal securities laws:  that Juniper's disclosures should have been more comprehensive.

8  Order at 24.[4]

9  **II.    PLAINTIFFS FAIL TO ALLEGE FACTS CREATING A "STRONG
          INFERENCE" OF SCIENTER**

10

11      The fact that the SAC alleges no new facts regarding the Individual Defendants' scienter

12  is, by itself, a sufficient reason to again dismiss Plaintiffs' claims.  Mot. at 22.  The only new

13  factual allegations are those attributed to CW6, who says nothing probative of any Defendant's

14  state of mind.  Mot. at 22-23.  Plaintiffs do not dispute this.  Instead, they repeat the same

15  arguments they advanced in opposition to Defendants' prior motions to dismiss – *i.e.*, that

16  scienter can be inferred based on the same allegations regarding "core operations" and stock

17  sales.  *Compare* Opp. at 19-20 *with* Original Opp. at 25-26.  The Court's prior order carefully

18  considered and rejected these arguments.  Order at 25-30.

19      If anything, Plaintiffs have further undermined their weak scienter arguments by claiming

20  that the disclosure guidelines in the new accounting rules were so "complex" that it takes an

21  expert to figure out what those guidelines required.  Opp. at 13.  The fact that Plaintiffs'

22

23      [4] Plaintiffs' reliance on *In re Mikohn Gaming Corp. Securities Litigation*, No. 1410, 2006
WL 2547095 (D. Nev. Sept. 1, 2006) is misplaced.  Opp. at 16-17.  In *Mikohn*, defendants made
24  no disclosure regarding the potential impact of a new accounting rule, even though they were
required to do so under the applicable rules.  2006 WL 2547095, at *12-14.  In *Mikohn*,
25  defendants did not even tell investors there was a new accounting rule that may impact future
results, even though the company earned up to forty percent of its revenues from the types of
26  transactions impacted by the new rule.  *Id.* at *12-14.  But here, Plaintiffs have openly conceded
that Juniper complied with Example 1 of the disclosure guidelines, and they do not dispute that
27  Juniper made numerous *additional* disclosures regarding the new accounting rules.  Order at 24;
Mot. at 5-8, 20.  *Mikohn* does not aid them.

28

1  purported expert offers a differing interpretation of the disclosure guidelines than Juniper's

2  interpretation confirms (giving Plaintiffs' expert the benefit of the doubt) that reasonable minds

3  could differ.  In such a case, any inference of scienter that could be drawn is weak, not strong.

4  Original Mot. at 26; *In re Taleo Corp. Sec. Litig.*, No. 09-00151, 2010 WL 597987, at *10-11

5  (N.D. Cal. Feb. 17, 2010) (inference of scienter is weak where accounting provision at issue is

6  subject to differing interpretations); *In re Medicis Pharm. Corp. Sec. Litig.*, 689 F. Supp. 2d

7  1192, 1204-05 (D. Ariz. 2009) (no inference of scienter where defendants' interpretation of

8  accounting rules is not "obviously incorrect"); *Bolt v. Merrimack Pharms., Inc.*, 503 F.3d 913,

9  918 (9th Cir. 2007) (holding that because accounting rules "tolerate a range of reasonable

10  treatments," courts "defer to the professional judgment of the accountant who audited or

11  prepared the financial statements, unless a GAAP authority *demands* a contrary accounting

12  treatment.").

13  ## CONCLUSION

14       Plaintiffs' SAC does not remedy the deficiencies identified by the Court's prior Order.

15  Plaintiffs make no effort to show that they could allege additional facts not currently in the SAC

16  to remedy those deficiencies.  The Court should dismiss this action with prejudice.

17  Dated:  November 8, 2012       WILSON SONSINI GOODRICH & ROSATI
18            Professional Corporation

19

20         By    /s/ Nina F. Locker
            Nina F. Locker

21         *Attorneys for Defendants*

22

23

24

25

26

27

28